IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT E. WILSON

v.                                            C.A. NO. 13-1562

IRON TIGER LOGISTICS, INC.


MEMORANDUM OPINION

SCHMEHL, J.                                   OCTOBER *16* 2014

Plaintiff brought this action, claiming he was terminated by the defendant in violation of

the Americans with Disabilities Act, as amended 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and the

Pennsylvania Human Relations Act, as amended 43 P.S. §§ 951 *et seq. (*"PHRA"). Plaintiff has

also added a common law claim for breach of contract.  Presently before the Court is the

defendant's motion for summary judgment. For the reasons that follow, the motion is granted.

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion

for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but

will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle &

Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect

the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the

non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

The following facts are either undisputed or construed in the light most favorable to plaintiff: Defendant engages in the delivery of trucks throughout North America. Plaintiff was employed by the defendant as a truck driver at defendant's Macungie, Pennsylvania Terminal from September 28, 2009 until December 18, 2010. His job duties included delivering trucks in a piggyback manner and then removing and reassembling them at the point of delivery ('the undecking process"). The undecking process involves conducting safety checks, hooking straps to the axles of the piggybacked trucks to lower them to the ground, using wrenches to loosen and tighten bolts, and reinstalling axles and exhaust stacks. The undecking process generally takes approximately one hour per truck to complete.

In January 2010, plaintiff experienced frostbite on several of his fingers while performing the undecking process at a location in Canada where plaintiff estimated the temperature to be approximately -25 degrees. Plaintiff subsequently filed a claim for worker's compensation benefits, which was granted. Plaintiff was on a worker's compensation leave of absence from the time he experienced frostbite, until he was released to return to work in June, 2010. When plaintiff returned to work in June 2010, his healthcare provider, John Jennings. M.D., issued a

2

disability certificate in which Dr. Jennings checked the box that provides "[p]atient has no restrictions." In a subsequent disability certificate dated November 8, 2010, Dr. Jennings stated that plaintiff "needs to avoid any prolonged exposure to cold" and that "[h]e must be able to warm up his fingers immediately if he feels any pain in the fingertip." This disability certificate was the only documentation submitted by plaintiff to defendant which placed any type of restrictions on plaintiff's job duties.

In December 2010, plaintiff's frostbite did not affect his ability to see, hear, eat, sleep, walk, stand, sit, reach, lift, bend, speak, breath, learn, read, concentrate, think, communicate, or interact with others. (Wilson Dep. at 177-179). Although plaintiff could not pick up small items like pennies and dimes with his fingers, he could pick up larger items such as coffee mugs. (Wilson Dep. at 180-181). There is no evidence that plaintiff lost the function of his hands. The November 8, 2010 restrictions did not in any way prevent plaintiff from performing his duties as a driver. According to plaintiff, his doctor told him that his fingers "will never be the same again." (Wilson Dep. at 181). However, that is not the same as losing the function of his fingers or hands.

Defendant offered to accommodate plaintiff by allowing him to wear winter gloves while delivering loads, to take longer while delivering loads, and to warm up his hands in the cab of his truck or the customers' facilities while delivering loads. According to defendant, these accommodations would allow plaintiff to perform his duties as a driver while still avoiding prolonged exposure to the cold and allowing plaintiff the ability to warm up his fingers immediately in compliance with the November 8, 2010 documentation from Dr. Jennings. According to plaintiff, undecking trucks with bulky gloves was not feasible. (Wilson Dep. at

3

112).

Plaintiff was terminated on December 18, 2010, when he refused a dispatch to Ottawa, Ontario, Canada in violation of a mutually agreed upon dispatch procedure under Article 23 of the Collective Bargaining Agreement in effect between defendant and plaintiff's union. Plaintiff was not told he was terminated because of frostbite or because of a disability. Plaintiff did not try the accommodations offered by defendant or offer any of his own. Instead,  plaintiff testified, "There was no way in hell I was going to Canada." (Wilson Dep. at 226). On December 18, 2010, plaintiff could not meet the requirements under Article 10 of the CBA for a transfer into the shop/yard areas of defendant's terminals. At no time during the three days it would have taken for plaintiff to complete the delivery to the Ottawa area did the temperature in the Ottawas area fall below 20 degrees Fahrenheit.

The ADA prohibits employment discrimination against "a qualified individual on the basis of disability" with regard to "the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). When analyzing discrimination claims under the ADA, courts apply the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Parker v. Verizon Pa., Inc., 309 Fed.Appx. 551, 555 (3d Cir. 2009). Under the McDonnell Douglas scheme:

> (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination.

Id. (citing McDonnell Douglas, 411 U.S. at 802.).

4

To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate (1) he is a disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse decision as a result of discrimination. Turner v. Hershey Chocolate U.S. 440 F.3d 604, 611 (3d Cir. 2006). The relevant period for making a determination of disability is at the time of the adverse employment decision. Rocco v. Gordon Food Service, 2014 WL 546726, at * 4 (W.D. Pa. Feb. 10, 2014).

To qualify as disabled, a plaintiff must prove that a physical or mental impairment (1) actually "substantially limits one or more of the major life activities," (2) a record of such impairment, or (3) plaintiff is regarded as having such an impairment." 42 U.S.C. § 12102. The statute further defines "major life activities" as including, but not limited to, "caring for oneself, performing manual tasks, seeing , hearing, eating, sleeping, walking, standing,. . . learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2).

After the passage of the ADA Amendments Act of 2008 ("ADAAA"), the definition of disability is not meant to be a demanding standard; rather, "the determination of whether an impairment substantially limits a major life activity requires an individualized assessment." Id. at * 7 (citing 29 C.F.R. § 1630.2(i)(2); § 1630.2(j)(1)(I)). After the enactment of the ADAAA, the Equal Employment Opportunity Commission revised its regulations, construing the definition of disability "broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.1(c)(4). "The question of whether an individual meets the definition of disability under this part should not demand extensive analysis." Id. Under the revised EEOC regulations,

5

> [a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. *Nonetheless, not every impairment will constitute a disability within the meaning of this section.*

Id. § 1630.2(j)(1)(ii). (emphasis added).

In Koller v. Riley Riper Hollin & Colagreco, 850 F.Supp. 2d 502 (E.D.Pa. 2012), this

Court recently analyzed the legislative history of the ADAAA, concluding that

> the ADAAA was adopted to specifically address certain impairments that were not receiving the protection that Congress intended-cancer, HIV-AIDS, epilepsy, diabetes, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities–not minor, transitory impairments, except if of such a severe nature that one could not avoid considering them disabilities.

Id. at 513 (citing 154 CONG. REC. 19,432 (2008) (statement of Rep. George Miller)). "[T]he

ADAAA still requires that the qualifying impairment create an 'important' limitation." Id.

The question of whether an individual is substantially limited in performing a major life

activity is a question of fact. Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 763 (3d

Cir. 2004). Therefore, the Court must determine if plaintiff has presented sufficient evidence

from which a reasonable jury could infer that plaintiff was substantially limited in his ability to

perform a major life activity.

Plaintiff himself admitted that in December 2010, his frostbite did not affect his ability to

see, hear, eat, sleep, walk, stand, sit, reach, lift, bend, speak, breath, learn, read, concentrate,

think, communicate, or interact with others. The only major life activity plaintiff can point to as

being affected by his frostbite is the ability to work. Plaintiff has not submitted any evidence that

6

he does not have full functional use of his hands or that he cannot work as a truck driver for

defendant. Plaintiff can clearly still work in warm weather climates or in the summer in cold

weather climates without any restrictions. The only restrictions are for cold weather climates in

the winter. However, Dr. Jennings did not specify that plaintiff could not work outdoors, that he

could not work in the cold, that he could not undeck trucks in the cold or that he could not travel

to Canada in the cold. In addition, Dr. Jennings did not state that plaintiff should be *permanently*

restricted from exposure to cold temperatures, but rather that plaintiff needs to avoid any

*prolonged* exposure to cold and that he must be able to wear gloves and warm up his fingers *if* he

feels any pain in the fingertips.  Because the Court finds that plaintiff has not produced any

evidence from which a reasonable jury could infer that plaintiff's impairment substantially limits

a major life activity  the plaintiff has failed to establish that he is disabled under the first prong

for qualifying as "disabled" under the ADA and ADAAA.

The Court also notes that plaintiff may not have a record of disability within the meaning

of the ADA so as to satisfy the second prong. His record demonstrates nothing more than he has

experienced frostbite in several of his fingers on one occasion, and does not have any ongoing

effects other than the restriction that he avoid prolonged exposure to the cold and have the

opportunity to warm up his fingers if he should feel pain. The fact that plaintiff received worker's

compensation benefits is certainly not determinative as to whether plaintiff is disabled under the

ADA. Marinelli v. City of Erie, Pa., 216 F.3d 354, 366, n 8(3d Cir. 2000) ("obtaining worker's

compensation benefits certainly does not mandate a finding of disability under the ADA.").

There is also no evidence that defendant "regarded" plaintiff as disabled. The ADAAA

states that an individual is "regarded as" disabled if he establishes that he "has been subjected to

7

an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §12102(3)(A). Notably, where a plaintiff is merely regarded as disabled rather than suffering from an actual disability, the perceived impairment must not be transitory or minor. Id. at § 12102(3).  Although plaintiff was granted worker's compensation benefits from January 2010 through June of 2010, he was permitted by his physician to return to work with no restrictions. The limited restrictions that Dr. Jennings placed on plaintiff in November of 2010 did not result in the defendant perceiving plaintiff as suffering from a severe on-going impairment as opposed to a transitory or minor one.

Since there is no evidence from which a jury could conclude that plaintiff was "disabled" even under the less demanding standard of the ADAAA,  plaintiff has failed to establish a prima facie case of discrimination under the ADA.  Accordingly, judgment will be entered in favor of the defendant on plaintiff's claims under the ADA.

Turning to plaintiff's claim under the PHRA, the Court notes that some courts in this district no longer treat the ADA and PHRA as coextensive. See Szarawara v. Cnty. of Montgomery, Civil No. 12-5714, 2013 WL 3230691, at *2 (E.D. Pa. June 27, 2013)("The ADAA relaxed the ADA's standard for disability [,]. . . .but the PHRA has not been similarly amended, necessitating separate analysis of Plaintiff's ADA and PHRA claims."). Other courts, however, continue to treat the ADA and PHRA as coextensive. See e.g., McFadden v. Biomedical Sys. Corp., Civil No. 13-4487, 2014 WL 80717, at *2 n.2 (E.D. Pa. Jan. 9, 2014).

That discrepancy is of no moment in this case since the Court has already found that plaintiff cannot meet the relaxed standard for disability under the ADA, It would logically follow

then that plaintiff cannot satisfy the more heightened standard of disability under the PHRA. Therefore, the Court will grant defendant's motion for summary judgment with respect to the PHRA claim.

The only remaining claim is an opaque state law claim for breach of contract. Plaintiff appears to allege that defendant breached certain provisions of the Collective Bargaining Agreement between defendant and plaintiff's union. See Complaint at paragraphs 37-39. Such a claim is preempted by Section 301 Of the Labor Management Relations Act. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220-21 (1985). Accordingly, judgment will be entered in favor of defendant on this claim as well.